IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID KRISTOFEK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 C 7455 |
| | ) | |
| VILLAGE OF ORLAND HILLS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' partial motions to dismiss. For the reasons stated below, the partial motions to dismiss are granted in part and denied in part without prejudice. In addition, the remaining state law claims are remanded to state court.

## BACKGROUND

Plaintiff David Kristofek (Kristofek) was allegedly hired in September 2010 as a part-time police officer by Defendant Village of Orland Hills (Village). Kristofek claims that in November 2010, he executed a traffic stop and proceeded to issue two traffic tickets (Tickets) and arrest (Arrest) the driver (Driver). Kristofek claims that

1

upon returning to the police station, he was told by other officers not to complete the paperwork for the Tickets and to delete the information entered about the Arrest on the police computer system. Kristofek claims that he decided to personally speak to Deputy Chief Blaha (Blaha) about the Arrest. According to Kristofek, Blaha took the documents from Kristofek relating to the Arrest (Arrest Documents) and ordered the Driver to be released from custody. Kristofek contends that Blaha acted for improper political motives.

In April 2011, Kristofek allegedly participated in an online police training seminar that dealt with police misconduct (Seminar), and Kristofek allegedly became concerned that since his name appeared on the Tickets and Arrest Documents, he might face criminal and civil liability because of the release of the Driver. Kristofek claims that he also became concerned that a crime was being committed by the failure to forward the Tickets and Arrest Documents to the Village Clerk's Office. Kristofek allegedly then consulted with an attorney and contacted the Federal Bureau of Investigation (FBI). Kristofek also allegedly informed other officers involved in the Arrest that Kristofek had contacted the FBI.

On April 21, 2011, Kristofek allegedly met with Blaha and Defendant Chief Thomas Scully (Scully). Scully allegedly indicated that he had heard that Kristofek had been speaking to other Village police officers about the Arrest. Kristofek then

2

allegedly informed Scully that he had reported the alleged misconduct relating to the Arrest to an outside law enforcement agency. Scully allegedly admonished Kristofek, stating that Scully needed to be able to trust his officers and that he no longer trusted Kristofek. Scully then allegedly gave Kristofek the option of resigning or having his employment terminated. Kristofek claims he refused to resign and he was allegedly fired for insubordination.

Kristofek includes in his complaint a claim based on alleged retaliation for refusal to participate in illegal activity brought under the Illinois Whistleblower Act, 740 ILCS 174/20 (Count I), a claim based on alleged retaliation for reporting of illegal activity brought under the Illinois Whistleblower Act (Count II), a claim based on alleged retaliation for other conduct protected under the Illinois Whistleblower Act (Count III), a state law retaliatory discharge claim (Count IV), a claim alleging a violation of his First Amendment rights brought pursuant to 42 U.S.C. § 1983 (Section 1983) (Count V), and a free speech claim based on an alleged violation of the Illinois Constitution (Count VI). Defendants have each filed a motion to dismiss the claims brought against them in Counts V and VI.

**LEGAL STANDARD**

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil

Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted).

## DISCUSSION

The Village argues that Kristofek has not alleged sufficient facts to state a valid *Monell* claim. In addition, the Village and Scully argue that Kristofek has failed to allege sufficient facts to suggest that the speech at issue was protected by the First Amendment.

### I. *Monell* Claim

The Village argues that Kristofek has not alleged sufficient facts to state a valid *Monell* claim. If a plaintiff brings a Section 1983 *Monell* claim against a local governmental entity, the entity can only be held liable for an unconstitutional act "if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." Thomas v. Cook County Sheriff's Dept., 604 F.3d 293, 303 (7th Cir. 2010). Kristofek acknowledges that he has not alleged in the complaint that any express policy or practice of the Village caused the alleged constitutional violations. Kristofek argues instead that he has stated a valid *Monell* claim on the basis that Scully was a policy-maker for the Village. (Ans. 14-15).

A. Allegations as to Policy-Making Authority

Defendants contend that Kristofek has failed to allege in the complaint that Scully was a policy-maker for the Village. The complaint does not include any allegations that provide that Scully had policy-making authority. Kristofek argues that he did allege that Scully had "final and unreviewable authority" to terminate Kristofek, from which Kristofek argues it can be inferred that Scully had policy-making authority. (Ans. 15). Kristofek has not alleged in the complaint that Scully had "final and unreviewable authority," and even if he had done so, his argument that it would constitute policy-making authority fails because a delegation of final authority to hire and fire is not the same as a delegation of authority to set policy for hiring and firing. *See Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 676-77 (7th Cir. 2009)(quoting *Kujawski v. Bd. of Comm'rs of Bartholomew County, Ind.*, 183 F.3d 734, 737 (7th Cir. 1999)). Thus, Kristofek's *Monell* claim fails at the outset, since Kristofek failed to allege that Scully had policy-making authority.

B. Acting in Capacity as Policy-Maker

Even if Kristofek had specifically alleged that Scully had policy-making authority, there is no allegation in the complaint that Scully was acting at the time in

6

question in his capacity as a policy-maker. The Seventh Circuit has explained that simply because an individual may be a policy-maker for certain purposes does not mean that every decision made by that individual amounts to a decision concerning policy. *Valentino*, 575 F.3d at 676-77. The Seventh Circuit has stated that "[t]he fact that a particular official-even a policymaking official-has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Id.* (internal quotations omitted)(quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)). The Seventh Circuit has further stated that "the mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority" and that "[t]here must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire." *Id.* (quoting *Kujawski*, 183 F.3d at 737).

In the instant action, Kristofek alleges only that Scully was the Village Police Chief, that Scully indicated that he could not trust Kristofek, and that Scully decided to terminate Kristofek's employment. Such allegations do not suggest a policy or practice, or that Scully was acting as a policy-maker when deciding to fire Kristofek for alleged insubordination. In support of the *Monell* claim, it was incumbent on Kristofek to include allegations concerning the exercise of policy-making authority

in the complaint, and he failed to do so. Therefore, the Village's motion to dismiss the *Monell* claim brought against the Village in Count V is granted. In addition, as indicated below, even if Kristofek had alleged sufficient facts to state a *Monell* claim, Kristofek has failed to state a valid Section 1983 First Amendment Retaliation claim. Thus, in addition to there being insufficient allegations relating to a custom, policy or practice, there is no valid underlying constitutional violation to support a *Monell* claim.

II. First Amendment Claim

Defendants argue that there are not sufficient allegations to suggest that the speech in question was protected by the First Amendment. Generally, a governmental entity "cannot retaliate against its employees for engaging in constitutionally protected speech." *Hutchins v. Clarke*, 661 F.3d 947, 955 (7th Cir. 2011). For a First Amendment retaliation claim brought by a public employee, the employee must show: (1) that "his speech was constitutionally protected," (2) that "the protected speech was a but-for cause of the employer's action," and (3) that "he suffered a deprivation because of the employer's action." *Wackett v. City of Beaver Dam, Wis.*, 642 F.3d 578, 581 (7th Cir. 2011).

In the instant action, Defendants argue that Kristofek has failed to allege facts

that suggest that the speech in question was constitutionally protected speech. To determine whether a public employee's speech was constitutionally protected speech, the court must "determine whether the plaintiff's speech addressed a matter of public concern" and, if so, "whether the interests of the [plaintiff] as a citizen in commenting upon the matters of public concern are outweighed by the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." *Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 914-15 (7th Cir. 2011)(stating that if "a public employee's speech does not implicate a matter of public concern, the *Pickering* balancing test is not reached because the Constitution does not insulate [the employee's] communications from employer discipline"). The Seventh Circuit has further indicated that "public employees speaking pursuant to their official duties are speaking as employees, not citizens, and thus are not protected by the First Amendment regardless of the content of their speech." *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006), and *Spiegla v. Hull*, 481 F.3d 961 (7th Cir. 2007)). In evaluating a First Amendment retaliation claim brought by a public employee, a threshold determination must be made by the court "regarding whether the public employee spoke in his capacity as a private citizen or as an employee." *Chaklos v. Stevens*, 560 F.3d 705, 712 (7th Cir. 2009).

Defendants argue that Kristofek has not alleged facts that suggest that he was

9

speaking out as a private citizen on a matter of public concern. Kristofek argues that he spoke out as a private citizen on matter of public concern when he spoke out about the alleged ticket-fixing scheme and police corruption. However, Kristofek's own allegations in his complaint suggest otherwise. Kristofek alleges that after participating in the Seminar, he "consulted with an attorney to obtain advice of what he should do to protect himself from possible civil and criminal liability." (Compl. Par. 22). Kristofek further alleges that after the Seminar, he "was concerned about personal civil liability stemming from the" Arrest. (Compl. Par. 22). Kristofek contends that "[p]ursuant to the legal advice from" his attorney, who had informed Kristofek of his potential civil and criminal liability, Kristofek contacted the FBI. (Compl. Par. 23). Kristofek claims that he told other Village police officers that " he had contacted the FBI out of concern that he and the other officers could be accused of improper ticket fixing and the commission of a crime by allowing the [D]river to evade prosecution." (Compl. Par. 24). Kristofek also alleges that he "had a good faith belief that whoever assisted the [D]river in evading prosecution for a valid arrest could be indicted for the crime of Official Misconduct and subject to discipline and/or personal liability." (Compl. Par. 24).

In regard to Kristofek's meeting with Scully and Blaha on April 21, 2011, Kristofek alleges that he told Scully that Kristofek "was concerned about exposing

himself and the police department to criminal and civil liability. . . ." (Compl. Par. 27). Kristofek also claims that he then told Scully and Blaha that Kristofek "[r]eported the incident to an outside law enforcement agency to protect him from being accused of political corruption and illegal activity." (Compl. Par. 28). The above are detailed allegations concerning Kristofek's motivations underlying his speech as an employee of the Village and Kristofek makes only one conclusory statement in Count V stating that Kristofek "spoke . . . in his capacity of a citizen. . . ." (Compl Par. 52). Based on Kristofek's own allegations, the only plausible conclusion is that Kristofek was speaking out as an employee of the Village to allegedly protect himself. The detailed allegations in the complaint do not suggest that Kristofek was acting as a citizen addressing a matter of public concern. Therefore, Kristofek has failed to show that the speech in question was constitutionally protected speech, and Scully's motion to dismiss the Section 1983 claim brought against Scully in Count V is granted.

III. Remaining State Law Claims

Having resolved the federal claims in this case, the court must determine whether to continue to exercise supplemental jurisdiction over the remaining state law claims. Once the federal claims in an action no longer remain, a federal court

has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-252 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial," the pendent claims should be left to the state courts). The Seventh Circuit has indicated that there is no "'presumption' in favor of relinquishing supplemental jurisdiction. . . ." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007). The Seventh Circuit has stated that, in exercising its discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial resources. . . ." *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994). The court has considered all of the pertinent factors and, as a matter of discretion, the court declines to exercise supplemental jurisdiction over the remaining state law claims. Such claims are therefore remanded to state court. Defendants' motions to dismiss Count VI, which relates to alleged violations of the Illinois Constitution, can be resolved in state court, and the motions to dismiss such claims are therefore denied without prejudice.

## CONCLUSION

Based on the foregoing analysis, Defendants' motions to dismiss the claims brought against them in Count V are granted. Defendants' motions to dismiss the claims brought against them in Count VI are denied without prejudice, and the remaining state law claims are remanded to state court.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 8, 2012